IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01257-WYD-MJW

MAURICE HARRIS,

Plaintiff,

v.

K. RITTENHOUSE,

Defendant.

**RECOMMENDATION ON MOTION TO DISMISS**
**(Docket No. 13)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by District Judge Wiley Y. Daniel on October 4, 2006. (Docket No. 11).

Pursuant to an Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge issued by Senior Judge Zita L. Weinshienk on September 22, 2005, the sole defendant remaining in this action is Nurse Practitioner Rittenhouse. (Docket No. 8). In his pro se Amended Prisoner Complaint, the incarcerated plaintiff alleges the following with respect to this defendant. On July 18, 2005, plaintiff slipped and fell on his knee in the prison kitchen, and he "was taken to medical where they xrayed my knee gave me ice, an ace wrap, motrin for the pain & swelling and a lay in for two days." (Docket No. 7 at 5). On that day, plaintiff "should have been scheduled for a follow-up by caregiver Rittenhouse to see if my knee got

better or worst [sic], but I wasnt [sic], and that violated my fourteenth amendment rights." (Docket No. 7 at 6). Plaintiff went back to the medical department on August 23, 2005, and was seen by another nurse. The following week, on August 31, 2005, plaintiff went back and was seen by Rittenhouse and another nurse. Plaintiff showed them that the swelling was not going down, claimed that the Motrin was not helping with the pain, and asked to see a doctor. He was merely told to take a week off from work. (Docket No. 7 at 6). Plaintiff returned to the medical department on September 7, 2005, and was seen by another nurse. On September 19, 2005, he went back again and saw a doctor walking in the hall to whom he showed his knee. Plaintiff was then told not to work in the kitchen or on slippery floors until an MRI was done of his right knee. The MRI was done on November 1, 2005, and he was scheduled for surgery, which was performed on January 18, 2006, six months after the incident. (Docket No. 7 at 6-7).

Based on the above, plaintiff raises the following three claims for relief. First, he raises a claim of deliberate indifference, asserting that when the incident occurred, he should have been scheduled for a follow-up by Rittenhouse and that when he saw her on August 31, 2005, he was merely told to take another week off from work. Second, he raises a claim of "Physical Damage" in which he asserts that when the injury occurred, he was not properly examined by Rittenhouse and that "from lack of proper medical care I was working on a [sic] injured knee and caused more damage to it by standing on it at work for numerous hours at a time. . . . violating my fourteenth amendment rights and causing physical discomfort." (Docket No. 7 at 8). Finally, he

raises a state claim of malpractice.  He asserts in that claim that when the injury occurred, "Rittenhouse failed to meet her qualifacations [sic] as a nurse practitioner by not scheduling me for a follow-up to evaluate my condition."  (Docket No. 7 at 9).  In addition, he complains that he showed Rittenhouse "that the pain & swelling were increasing tremendously.  She kept given [sic] me ice, motrin, and layins from work instead of treating my situation immediately!"  (Docket No. 7 at 9).  She also answered and denied plaintiff's Step 1 grievance.  Plaintiff contends that "[b]ecause of inadequate medical treatment my fourteenth amendment rights were violated."  (Docket No. 7 at 9). Plaintiff seeks unspecified compensatory and punitive damages, including "medical treatment as required along with any permanent disability stipend."  (Docket No. 7 at 11).

Included as attachments to the Amended Complaint are some medical records concerning plaintiff's medical treatment.  Such documents may be considered by the court when ruling on a Rule 12(b) motion to dismiss.  Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001).

Now before the court is defendant Rittenhouse's Motion to Dismiss (Docket No. 13) in which she makes the following arguments for dismissal: (1) claims one and two should be dismissed because the plaintiff has failed to state a claim for the violation of his Eighth Amendment rights by defendant; (2) in the alternative, defendant is entitled to qualified immunity with regard to the plaintiff's deliberate indifference claim; (3) the court should decline to exercise supplemental jurisdiction over plaintiff's claim for malpractice, and that claim should be dismissed; and (4) in the alternative, claim two is

4

duplicative of claim one and should be dismissed.

Plaintiff filed a Response to defendant's motion. (Docket No. 18). Plaintiff asserts therein that the deliberate indifference came into effect when he

> made approximately five trips to medical after the initial trip to medical the day the injury accured [sic] and asked to see a doctor because I was in extreme pain. Each time I returned to medical and showed them my knee, I was told to put ice on it, or either take another week off from work. . . . It was obvious by just looking at my knee that something was wrong with it, It was three times the normal size, even lay person would easily recognize necessity for doctor's attention. Medical still refused to let me see a doctor, or even examine my knee. I recieved [sic] no medical attention at all on 8-23-05 8-31-05 and 9-7-05. Only when I saw doctor [sic] Webster on 9-19-05 in the hall and showed him my knee was I taken to his office immediately an [sic] examined. Thats [sic] when he said something was definately [sic] wrong with my knee and scheduled me to have an MRI.

(Docket No. 18 at 2). In addition, plaintiff asserts that he suffered severe pain for several months, which is sufficient to establish the objective element of the deliberate indifference test. (Docket No. 18 at 3). He also claims for the first time that the "orthopedic specialist determined that because of the nature of the injury and the delay in medical treatment pateints [sic] knee has been damaged to the point of permanent impairment. Therefor [sic] the plaintiff meets the substantial harm requirement for deliberate indifference." (Docket No. 18 at 3). Plaintiff also contends that the subjective prong of the deliberate indifference test has been met by

> [j]ust the fact that the defendant could see that my knee was extremely large after making several trips to medical and still would not even examine me, show's [sic] that the defendant had no regard's [sic] to my safety or health. The defendant had to be aware that a substantial risk of serious harm existed because this is prison and if Im [sic] injured and cant [sic] defend myself, then Im [sic] at risk of serious harm. The MRI states that had a large knee joint effusion, so not only was it obvious it was very

5

>     detectable. Plaintiff is allegding [sic] permanent injury to his knee and
>     this alleged injury satisfies the substantial harm requirement.

(Docket No. 18 at 4).

The court has carefully considered the motion, the response thereto, and the Amended Complaint and attachments thereto. The court now being fully informed makes the following findings, conclusions of law, and recommendation.

For purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and resolve all reasonable inferences in plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A case should not be dismissed for failure to state a claim unless the court determines beyond doubt that plaintiff can prove no set of facts which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since the plaintiff is not an attorney, his pleading and response have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume

the role of advocate for the pro se litigant." Id.

The Eighth Amendment's ban on cruel and unusual punishment is violated if defendant's "deliberate indifference to serious medical needs of [plaintiff] constitutes the unnecessary and wanton infliction of pain." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.), cert. denied, 127 S.Ct. 131 (2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "To prevail on a claim under 42 U.S.C. § 1983, however, 'inadvertent failure to provide adequate medical care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical treatment under the Eighth Amendment." Id.

For such deliberate indifference claims, there is "a two-pronged inquiry, comprised of an objective and subjective component.  Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension. . . .  In addition, under the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'" Id. at 1230-31.

In the instant case, defendant allegedly personally treated the plaintiff for this injury just twice, on the day of the injury (July 18, 2005) and then on August 31, 2005. Plaintiff was seen by other medical providers for his injury both between those two dates and after.

The Ambulatory Health Record for the date of the injury (Docket No. 7 at 17), which is attached to the Amended Complaint, shows the following.  Plaintiff indicated that his knee had been hurting before his slip and fall that day.  In addition, he reportedly had an injury to that knee a year before, and it took one to two months to

heal. His knee was described as "minimally swollen, no erythema, no ecchymosis, AFROM, no crepitus, tender B jt space Med [greater than] Lat, neg grind, neg drawer test." The x-ray reportedly showed no obvious dislocation or fracture. (See also Docket No. 7 at 18 - "Xray Right Knee: Normal."). Defendant treated plaintiff for his injury with ice, an ace bandage, medication for pain and swelling, and an order permitting him to not report to work for two days. This report does not demonstrate an Eighth Amendment violation by defendant. While plaintiff complains that the defendant did not schedule a follow-up appointment, defendant correctly notes that there are no allegations indicating that plaintiff was in some way precluded from returning to the medical department on his own volition if he needed any follow-up care, and indeed, according to his allegations in the Amended Complaint, he did so on several occasions.

There is no report attached to the Amended Complaint from the plaintiff's medical visit on August 31, 2006. Instead, there is merely a note from that date indicating that the plaintiff did not have to work in the kitchen for one week. (Docket No. 7 at 21). In any event, plaintiff asserts in his Amended Complaint that he showed the defendant and another nurse that the swelling was not going down, claimed that the Motrin was not helping with the pain, and asked to see a doctor. He was merely told to take a week off from work. (Docket No. 7 at 6). After plaintiff was seen by a doctor two weeks later, a note was written that there was to be no working in the kitchen or on slippery floors until the MRI of plaintiff's right knee was done. (Docket No. 7 at 25). The MRI was not done until November 1, 2005. (Docket No. 7 at 30-31). Plaintiff does not allege that between the time of the doctor's exam and the MRI any different

treatment was provided than that provided earlier by the defendant.

This court agrees with the defendant that plaintiff's allegations do not establish or indicate that there were facts of which the defendant was aware that would have caused her to know that there was an "excessive risk" to plaintiff's health or safety, nor do they establish "wanton" conduct toward plaintiff.  This is true particularly in light of the fact that plaintiff had a normal x-ray and had a prior injury to the same knee which, according to the plaintiff, took one to two months to heal.  This court thus finds that the plaintiff has not stated an Eighth Amendment claim of deliberate indifference by this defendant.  See Self v. Crum, 439 F.3d at 1232 ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.  Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing. . . .  The Eighth Amendment's prohibition on cruel and unusual punishment is not violated. . . . ").  "Indeed, our subjective inquiry is limited to consideration of the [defendant's] knowledge at the time [she] prescribed treatment for symptoms presented, not to the ultimate treatment necessary." Id. at 1233.

Based on the above, it is recommended that the plaintiff's first claim be dismissed.  Plaintiff's second claim also appears to be in essence a deliberate indifference claim, so it is further recommended that the second claim be dismissed as well.

**Supplemental Claim**

Plaintiff raises a state law supplemental claim of malpractice in claim three.

9

Defendant asserts that the court should decline to exercise supplemental jurisdiction over this claim. This court agrees. "Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over the remaining state-law claims." Sauer v. McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001). "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court." Id. (citation omitted). Generally, "the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial." Id. (citation omitted). Furthermore, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." Id. (quotations omitted). In this case, there are no compelling reasons to exercise supplemental jurisdiction. This court thus recommends that the plaintiff's state law claim be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). See Wallin v. Hill, 2005 WL 1924663 (D. Colo. Aug. 10, 2005), aff'd sub nom. Wallin v. Dycus, 2006 WL 2590493 (10th Cir. Sept. 11, 2006).

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss (Docket No. 13) be granted. It is further recommended that judgment be entered for the defendant on claims one and two and that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claim (claim three), and that the plaintiff's state law claim (claim three) thus be dismissed without prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

10

**parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated: March 2, 2007          s/ Michael J. Watanabe
      Denver, Colorado        Michael J. Watanabe
                                     United States Magistrate Judge